**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CRIMINAL ACTION NO. 25-47-DLB-CJS**

**UNITED STATES OF AMERICA**                                               **PLAINTIFF**

**VS.**             **MEMORANDUM OPINION AND ORDER**

**RONALD PETER KNOX**                                                 **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \*

**I.  INTRODUCTION**

This matter is before the Court upon Defendant Ronald Peter Knox's Motion to Suppress.  (Doc. # 26).  The United States filed its Response (Doc. # 27) and Defendant filed his Reply (Doc. # 28).  Upon review of the briefing and issues presented, the Court concludes that a hearing on the motion is not necessary.  For the following reasons, the Motion is **denied**.

**II.  FACTUAL AND PROCEDURAL HISTORY**

The facts in this case are largely undisputed and are gathered from the parties' briefing.  (*See* Docs. # 26, 27, and 28).[1]  On January 11, 2025, a Campbell County Police Department ("CCPD") detective conducted an online investigation to identify individuals using BitTorrent peer-to-peer ("P2P") networks to share images of child sexual abuse materials ("CSAM").  (Doc. # 26 at 2).  By downloading these files, the detective was able to connect one of the identified CSAM files to an IP address and port identification

---

[1]     Because the parties do not dispute the relevant facts, the Court will only refer to Defendant's Motion for the factual background.

1

associated with 513 Summer Point Drive, Walton, Kentucky 41904 ("the premises"). (*Id.*). In response to that information, CCPD served a subpoena on Charter Communications, the internet service provider for the premises, which identified that the IP address was registered to a Kameron Thomas. (*Id.*). Investigators subsequently confirmed that Thomas was the primary owner of the premises but noted that Defendant and a third individual were residents of the premises as well. (Doc. # 27 at 1).

On May 14, 2025, Federal Bureau of Investigation ("FBI") Task Force Officer ("TFO") Austin Ross swore out his affidavit in support of a search warrant for the premises and electronic devices located in the premises. (*See* Doc. # 26-2 at 16). The search warrant application was based upon TFO Ross's affidavit which included both a description of the premises ("Attachment A") and the things to be seized and searched ("Attachment B"). (Docs. # 26-1 and 26-2). Magistrate Judge Candace J. Smith granted the search warrant that same day. (Doc. # 26-1).

On May 16, 2025, FBI agents executed the warrant and recovered numerous devices from the premises. (*See* Doc. # 3 at 5). Two of the devices, specifically a cell phone and a G series gaming computer, were recovered from Defendant's room and determined to have the P2P file sharing network downloaded. (*Id.*). Agents determined the devices belonged to Defendant, and that both the cell phone and computer contained files of CSAM which had been downloaded on January 11, 2025, and May 15, 2025. (*Id.*).

On May 28, 2025, a criminal complaint was filed against Defendant. (Doc. # 3). On May 30, 2025, Defendant was arrested, and, after receiving his Miranda warnings, made incriminating statements about the CSAM found on his devices. (*See* Docs. # 5

2

and 27 at 3). On June 12, 2025, Defendant was indicted on one count of distributing a visual depiction of a minor engaging in sexually explicit conduct on or about January 11, 2025, and one count of possession on May 16, 2025. (Doc. # 12). On July 23, 2025, Defendant filed a motion to suppress all evidence seized by law enforcement officials on May 16, 2025, as well as any subsequent evidence obtained as a result of that search. (Doc. # 26).

### III. ANALYSIS

In his Motion to Suppress, Defendant first argues that the affidavit supporting the search warrant was not properly incorporated. (Doc. # 26 at 7). Defendant further argues that even if the affidavit is properly incorporated, the search of his belongings was unsupported by probable cause and the affidavit failed to meet the particularity requirement in violation of his Fourth Amendment rights. (*Id*. at 1). The United States disagrees and additionally argues that in the event the Court agrees with Defendant, the good faith exception to the exclusionary rule would apply. (Doc. # 27 at 1). The Court addresses each of Defendant's arguments in turn.

**A. TFO Ross's affidavit was properly incorporated.**

Defendant first argues that the "facts purporting to establish probable cause to search the 513 Summer Pointe Drive residence are listed only within TFO Ross's Affidavit in Support of a Search Warrant, not the warrant itself." (Doc. # 26 at 7). Defendant further notes that the "warrant makes a blanket reference to 'affidavit(s)' but does not reference the Affidavit in Support of a Search Warrant Affidavit by name or title." (*Id*.). In response, the United States argues that "a warrant need not explicitly refer to the 'name or title' of a

3

submitted affidavit for a reviewing court to consider whether the affidavit supported a finding of probable cause." (Doc. # 27 at 7).

"A search warrant may be construed with reference to a supporting affidavit if the affidavit accompanies the warrant and the warrant incorporates the affidavit by reference." *United States v. Blakeney*, 942 F.2d 1001, 1024 (6th Cir. 1991) (citing *United States v. Maxwell*, 920 F.2d 1028 (D.C. Cir. 1990). Here, there is no disagreement that TFO Ross's affidavit was attached to the warrant. Rather, Defendant argues that the warrant did not incorporate the affidavit by reference. (Doc. # 26 at 7). The warrant, signed by Magistrate Judge Candace J. Smith, indicates that the "affidavit(s) . . establish[ed] probable cause . . . ." (Doc. # 26-1 at 2). Additionally, Judge Smith's signature can also be found on the affidavit. (*See* Doc. # 26-2 at 16).

Defendant points to *Groh v. Ramirez*, 540 U.S. 551 (2004) as basis for his incorporation argument, however, "[w]hat doomed the warrant in *Groh* was . . . the failure of the warrant to cross-reference the affidavit at all." *Baranski v. Fifteen Unknown Agents of the BATF*, 452 F.3d 433, 439 (6th Cir. 2006). No equivalent problem occurred here. The warrant here referenced the attached affidavit; Judge Smith signed the affidavit and warrant; and, as will be discussed, the affidavit and attachments described with particularity the items to be seized. Given these facts, Judge Smith was certainly aware of the scope of the search she was authorizing. This finding is consistent with Sixth Circuit precedent. *See Id*. at 440 ("[T]his warrant and affidavit (and the magistrate's signature on both of them) made it clear that the magistrate found that there was probable cause to support the search."). Therefore, this Court finds that TFO Ross's affidavit was properly incorporated.

4

**B. The search warrant was supported by probable cause.**

The Fourth Amendment provides, in pertinent part, that a search warrant may issue only "upon probable cause, supported by Oath or affirmation[.]" U.S. Const. amend. IV. Generally, if a search or seizure is not conducted in compliance with the Fourth Amendment, all evidence obtained because of the search or seizure must be suppressed. *See United States v. Gross*, 550 F.3d 578, 583 (6th Cir. 2008) ("[E]vidence and statements obtained from [an] illegality must be excluded as 'fruit of the poisonous tree.'") (citing *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)). When determining whether a search warrant was supported by probable cause, courts limit their review to the "four corners of the affidavit." *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010).

To establish probable cause, "an affidavit must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006). "The critical element in a reasonable search is not that the owner of property is suspected of crime but that there is a reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." *Brooks*, 594 F.3d at 492-93 (quoting *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005)). In reviewing a magistrate's decision to issue a warrant, the Court must accord the magistrate's determination "great deference." *Brooks*, 594 F.3d at 492 (6th Cir. 2010) (quoting *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000)).

Here, Defendant argues that even if the affidavit to the search warrant application is accepted as incorporated, it "fails to state facts establishing probable cause to search [Defendant's] devices." (Doc. # 26 at 7). Specifically, Defendant argues that the affidavit

5

"fails to outline not only the facts underlying the legal conclusion . . . but it does not even assert a bare legal conclusion that probable cause exists as to the electronics belonging to [Defendant] and the third resident." (*Id*. at 9). Defendant points to the fact that the affidavit stated only that Defendant was a possible resident of the home, and that the warrant explicitly recognized the possibility that the residence might contain electronic devices belonging to residents not suspected of a crime. (*Id*. at 8). In response, the United States relies upon *United States v. Bethel*, No. 23-3482/3668, 2024 WL 1698144 (Apr. 19, 2024) in arguing that probable cause existed. (Doc. # 27 at 9). Because this Court already determined that TFO Ross's Affidavit was properly incorporated, it will address whether that affidavit established probable cause to search Defendant's devices.

In the unpublished Sixth Circuit decision *United States v. Bethel*, officers executed a warrant to search and seize any computers and cell phones located on the premises that could be used to display CSAM. No. 23-3482/3668, 2024 WL 1698144, at * 1 (Apr. 19, 2024). The officers traced the IP address to an individual with the last name Bonavita, but the Court noted it was unclear whether the officers also knew that the defendant, Bethel, also lived on the premises. *Id*. When executing the warrant, officers searched Bethel's phone, finding CSAM. *Id*. Bethel moved to suppress the evidence, arguing that the warrant's scope exceeded the probable cause supporting it. *Id*. In other words, like the present Defendant, Bethel argued that the warrant covered only Bonavita's devices, not his. *Id*.

In reviewing the issuance of the warrant, the Sixth Circuit first noted that the warrant authorized the search of "any and all computer software" and "computer(s) including cellphones" found at the Defendant's address that may be used to access child

6

pornography. *Id*. at * 2.  The court reasoned that because Bethel's phone was found at the listed address, and could have been used to access CSAM, the warrant did in fact cover the search of his phone. *Id*.  Nevertheless, Bethel continued to argue that the officers lacked probable cause to search *his* phone. *Id*.  The court noted that the IP address used to share CSAM was tied to the home where Bonavita and Bethel both lived, and that this circuit has repeatedly held that "this fact alone shows that probable cause existed to issue a valid search warrant for the search of electronic devices found in the residence." *Id*. (citing *United States v. Hinojosa*, 606 F.3d 875, 885 (6th Cir. 2010); *United States v. Gillman*, 432 F. App'x 513, 515 (6th Cir. 2011); *United States v. Wager*s, 452 F.3d 534, 539 (6th Cir. 2006); *United States v. Richards*, 659 F.3d 527, 538–40 (6th Cir. 2011)).

Defendant's argument mirrors that of Bethel's, arguing that the warrant failed to establish probable cause as to his devices and that the affidavit "only asserted that he lived in the same place as a person suspected of a crime." (Doc. # 26 at 8).  Here, the affidavit purported to search "computers or storage media used as a means" to store digital CSAM which were located at the premises. (Doc. # 26-1 at 3-4); (*see also* Doc. # 26-2 at 3) (application for search warrant to search the entire premises "and any computer . . . or other digital file storage device located there[.]").  As the Sixth Circuit in *Bethel* held, Defendant's phone falls under the scope of the warrant, as it was a device located on the premises and could have been used to access CSAM. *Bethel*, 2024 WL 1698144, at * 3 ("And when a warrant authorizes the search of a single residence, police ordinarily can search 'anywhere there is probable cause to believe an item described in the warrant might be found.'").  Moreover, because the IP address was tied to the premises where

7

Defendant lived at the time, pursuant to this Circuit's repeated holdings, "probable cause existed to issue a valid search warrant for the search of electronic devices found in the residence." *Id*. at * 2.

Defendant attempts to distinguish *Bethel*, arguing that because Bethel's presence in the home was unknown, "the warrant application could not have listed specific facts to establish probable cause that his devices could contain evidence of a crime." (Doc. # 28 at 2). Defendant argues that unlike *Bethel*, here, officers knew Defendant lived in the home but "failed to articulate any facts about [Defendant] from which a neutral judicial officer could infer any wrongdoing." (*Id*.). Defendant further argues that because the warrant mentioned additional residents it left "open the possibility that their items may be searched and seized" which allows for a significant amount of discretion on the part of the officers that "does not comply with the Fourth Amendment." (*Id*.).

Interestingly, this argument was posed by the Court in *Bethel*. There, the court acknowledged that the affidavit focused specifically on Bonavita, never mentioning Bethel. *Bethel*, 2024 WL 1698144 at * 2. However, the Court posed a scenario which demonstrated why the inclusion of another resident, or lack thereof, was immaterial. *Id*. Specifically, the court stated that a warrant which contains information tying CSAM to an IP address, but does not mention any identifying information, phone numbers, or account usernames would be sufficient to establish probable cause of all electronic devices at that residence. *Id*. Alternatively, the court gave another example, one where the warrant connecting CSAM to the IP address provided additional information linking the crime to a specific resident. *Id*. There, the court pointed out that under Bethel's argument "that *stronger* evidence should lead to a *weaker* search warrant." *Id*. (emphasis in original).

8

The *Bethel* court concluded that it would "decline to create a perverse incentive by telling officers the more information they provide, the weaker the probable cause."  *Id*.

Here, the affidavit acknowledged that other residents did live on the premises, but admittedly, linked the CSAM materials to Thomas.  However, to find that the agents, who were forthcoming about what had been uncovered during the course of their investigation, had less probable cause than they would have had they disregarded the information about other residents' potential presence, would create that exact "perverse incentive" the Sixth Circuit warned about.  Defendant has not pointed to any case law, nor is the Court aware of any, that is on point with his argument.  Finally, Defendant attempts to distinguish *Bethel* on the grounds that the warrant in *Bethel* explained that due to CSAM existing as an electronic medium it can easily be shared across multiple devices.  (Doc. # 28 at 2).  Defendant argues that "the warrant application and affidavit in this case makes no mention of sharing between devices in a home[.]"  However, that is not an entirely accurate portrayal of the affidavit.  Certainly, TFO Ross's affidavit notes that "a user can set up an online storage account from *any* computer with access to the internet" and that those who possess or distribute CSAM "often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, *such as a computer or surrounding area*."  (Doc. # 26-2 at 7 and 11) (emphasis added).

Therefore, based on this Circuit's repeated holdings that officers have probable cause to search any devices found in a home that is linked to CSAM, the Court concludes that the affidavit contained probable cause to search Defendant's devices.

### C. The affidavit met the particularity requirement.

Defendant additionally argues that the "search warrant for [the premises] failed to meet the particularity requirement because it left open the possibility of officer discretion." (Doc. # 28 at 9). Specifically, Defendant points to paragraphs 28 and 30 of the Affidavit which he argues "provide[s] inappropriate discretion by asserting that the warrant covers the devices of other residents if officers determine a possibility that the things described in this warrant could be found on those devices." (*Id*.). Defendant alleges that "[a]llowing officers' discretion to determine if probable cause exists rather than deferring to a magistrate's decision falls [sic] to comport with the particularity requirement as articulated in *Berger*." (*Id*.).

"It is well-settled that items to be seized pursuant to a search warrant must be described with particularity to prevent the seizure of one thing under a warrant describing another in violation of the Fourth Amendment." *United States v. Wright*, 343 F.3d 849, 863 (6th Cir. 2003). "The degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought." *United States v. Richards*, 659 F.3d 527, 537 (6th Cir. 2011) (quoting *United States v. Greene*, 250 F.3d 471, 477 (6th Cir. 2001)). In terms of electronic and storage media, "the federal courts have rejected most particularity challenges to warrants authorizing the seizure and search of entire personal or business computers." *Richards*, 659 F.3d at 538. As applied to crimes involving CSAM, various federal courts have found that a search of all computers in the house does not violate the particularity requirement. The Court agrees. As previously stated, due to the digital nature of CSAM, when numerous devices are in one home, all of which are linked to the premises and the IP address, there is probable cause to believe evidence of

10

such crime could be on any of the devices located in that house. While Defendant may have felt like a search of his devices was a violation of his Fourth Amendment right, because the search was "limited to a search for evidence explicitly authorized in the warrant" no Fourth Amendment violation occurred. *Richards*, 659 F.3d at 540.

Based on the above, the Court concludes that the affidavit, and the evidence seized, was not in violation of the Fourth Amendment. Because the Court found that there was no Fourth Amendment violation, it need not address the United States's good faith argument. Therefore, in the absence of any other reason to do so, the Court will not suppress such evidence.

## IV.   CONCLUSION

For the reasons stated herein, the Court concludes that Defendant's Fourth Amendment rights were not violated in this case. Accordingly,

**IT IS ORDERED** that Defendant Ronald Peter Knox's Motion to Suppress (Doc. # 26) is **DENIED**.

**IT IS FURTHER ORDERED** that this matter is scheduled for a **Scheduling Conference** on **Thursday, September 18, 2025 at 1:30 p.m.** in Covington.

This 10th day of September, 2025.



Signed By:
David L. Bunning
Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Covington Criminal\2025\25-47 MOO re MTS.docx